**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Dean A. Poirier

   v.                                      Civil No. 14-cv-242-LM
                                          Opinion No. 2015 DNH 166
Carolyn W. Colvin, Acting
Commissioner, Social
Security Administration

**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Dean Poirier moves to
reverse the Acting Commissioner's decision to deny his
application for Social Security disability insurance benefits,
or DIB, under Title II of the Social Security Act, 42 U.S.C. §
423, and for supplemental security income, or SSI, under Title
XVI, 42 U.S.C. § 1382.  The Acting Commissioner, in turn, moves
for an order affirming her decision.  For the reasons that
follow, the decision of the Acting Commissioner, as announced by
the Administrative Law Judge ("ALJ") is affirmed.

**I. Standard of Review**

The applicable standard of review in this case provides, in
pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of

> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB

decisions); see also 42 U.S.C. § 1383(c)(3) (establishing

§ 405(g) as the standard of review for SSI decisions).  However,

the court "must uphold a denial of social security . . .

benefits unless 'the [Acting Commissioner] has committed a legal

or factual error in evaluating a particular claim.'" Manso-

Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting

Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting

Commissioner's findings of fact be supported by substantial

evidence, "[t]he substantial evidence test applies not only to

findings of basic evidentiary facts, but also to inferences and

conclusions drawn from such facts." Alexandrou v. Sullivan, 764

F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner,

360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial

evidence is 'more than [a] mere scintilla.  It means such

relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d

594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402

U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the

[Acting Commissioner] to determine issues of credibility and to

draw inferences from the record evidence.  Indeed, the
resolution of conflicts in the evidence is for the [Acting
Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS,
955 F.2d 765, 769 (1st Cir. 1991) (citations omitted).
Moreover, the court "must uphold the [Acting Commissioner's]
conclusion, even if the record arguably could justify a
different conclusion, so long as it is supported by substantial
evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st
Cir. 1988).  Finally, when determining whether a decision of the
Acting Commissioner is supported by substantial evidence, the
court must "review[] the evidence in the record as a whole."
Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of
HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

## II. Background

     The parties have submitted a Joint Statement of Material
Facts, document no. 19.  That statement is part of the court's
record and will be summarized here, rather than repeated in
full.

     Much of the medical record in this case pertains to
treatment Poirier has received for an injury to his left knee.
However, he also has a history of complaints concerning back
pain.  In November of 2010, an MRI showed a small disc bulge at
L5-S1 with no nerve root impingement and no spinal stenosis.  It

3

would appear that treatment for Poirier's back condition has been limited to non-narcotic medication and, perhaps, some physical therapy.

The record includes two Disability Determination Explanation ("DDE") forms prepared by the Social Security Administration ("SSA"): one pertaining to Poirier's claim for disability insurance benefits; and the other pertaining to his claim for supplemental security income.  The SSA disability adjudicator who completed those forms indicated that no consultative examination was required, and none was ordered. See Administrative Transcript (hereinafter "Tr.") 58, 67.  The DDE forms also report the results of an assessment of Poirier's physical residual functional capacity ("RFC")[1] completed by Dr. Burton Nault, a state-agency medical consultant.  Among other things, Dr. Nault opined that Poirier could sit, with normal breaks, for a total of about six hours in an eight-hour workday. See Tr. 60, 69.  Dr. Nault's opinion is the only opinion on Poirier's physical RFC in the record; Poirier did not submit a statement from a treating or examining source concerning his ability to perform work-related activities.

---

[1] "Residual functional capacity" is a term of art that means "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

Poirier received a hearing before an ALJ.  He represented himself.  The transcript of Poirier's hearing demonstrates that he neither called any witnesses nor asked the ALJ, on the record, whether he could do so.  In an affidavit he submitted in support of his motion for a remand pursuant to sentence six of 42 U.S.C. § 405(g), Poirier described two brief conversations he had concerning potential witnesses, one with an SSA employee outside the hearing room, and one with the ALJ, inside the hearing room, but before the hearing went on the record.  See Order (doc. no. 14) 2.

After the hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3.  The claimant has the following severe impairments: degenerative disc disease (lumbar spine); degenerative joint disease (left knee); depression; and anxiety (20 CFR 404.1520(c) and 416.920(c)).
>
> . . . .
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> . . . .
>
> 5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a).  He is able to occasionally balance, stoop, kneel, crouch and crawl, and must avoid all ladders, ropes and scaffolds.  He

is able to perform simple unskilled work.  He is able to maintain attention and concentration for two-hour increments throughout an eight-hour workday.

. . . .

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

Tr. 13, 14, 16, 20.  Based upon his assessment of Poirier's residual functional capacity, and a hypothetical question posed to a vocational expert ("VE") that incorporated the RFC recited above, the ALJ determined that Poirier was able to perform the jobs of touch-up screener, surveillance system monitor, and escort vehicle driver.

### III. Discussion

#### A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  To be eligible for supplemental security income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets.  42 U.S.C. § 1382(a).  The question in this

case is whether the ALJ correctly determined that Poirier was

not under a disability from August 15, 2010, through May 24,

2013, which is the date of the ALJ's decision.

For the purpose of determining eligibility for disability

insurance benefits,

> [t]he term "disability" means . . . inability to
> engage in any substantial gainful activity by reason
> of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3)(A)

(setting out a similar definition of disability for determining

eligibility for SSI).  Moreover,

> [a]n individual shall be determined to be under a
> disability only if his physical or mental impairment
> or impairments are of such severity that he is not
> only unable to do his previous work but cannot,
> considering his age, education, and work experience,
> engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of
> whether such work exists in the immediate area in
> which he lives, or whether a specific job vacancy
> exists for him, or whether he would be hired if he
> applied for work. . . .

42 U.S.C. § 423(d)(2)(A) (pertaining to DIB); see also 42 U.S.C.

§ 1382c(a)(3)(B) (setting out a similar standard for determining

eligibility for SSI).

To decide whether a claimant is disabled for the purpose of

determining eligibility for either DIB or SSI benefits, an ALJ

is required to employ a five-step process.  See 20 C.F.R.

§§ 404.1520 (DIB) & 416.920 (SSI).

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920).

The claimant bears the burden of proving that he is

disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He

must do so by a preponderance of the evidence.  See Mandziej v.

Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v.

Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform.  Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982).

Seavey, 276 F.3d at 5 (parallel citations omitted).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) [claimant]'s
> subjective claims of pain and disability as supported
> by the testimony of the [claimant] or other witness;
> and (3) the [claimant]'s educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690

F.2d 5, 6 (1st Cir. 1982)).

### B. Poirier's Claims

Poirier claims that the ALJ erred by failing to adequately

develop the record and also erred by refusing to hear testimony

from two witnesses he wanted to call.  The court considers each

issue in turn.

### 1. Development of the Record

Poirier first claims that the ALJ committed reversible

error by failing "to order a consultative examination in order

for him to be able to make an informed decision about [his]

sitting limitations and ability to do sedentary work."  Cl.'s

Mem. of Law (doc. no. 16-1) 6.

Given the non-adversarial nature of Social Security

proceedings, the Acting Commissioner "had a duty 'to develop an

adequate record from which a reasonable conclusion [could have

been] drawn.'"  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st

Cir. 1991) (per curiam) (quoting Carrillo Marin v. Sec'y of
Health & Human Servs., 758 F.2d 14, 17 (1st Cir. 1985)).
Moreover, the Acting Commissioner's responsibility to develop
the record

> increases in cases where the appellant is
> unrepresented, where the claim itself seems on its
> face to be substantial, where there are gaps in the
> evidence necessary to a reasoned evaluation of the
> claim, and where it is within the power of the
> administrative law judge, without undue effort, to see
> that the gaps are somewhat filled — as by ordering
> easily obtained further or more complete reports or
> requesting further assistance from a social worker or
> psychiatrist or key witness.

Heggarty, 947 F.2d at 997 (quoting Currier, 612 F.2d at 598).

In Heggarty, the claimant suffered from various physical
impairments, including eczema.  See 947 F.2d at 992.  At the
time of his hearing, he was receiving treatment from a Dr.
Bixby.  See id.  At the claimant's hearing, when the ALJ learned
that the administrative record contained no information or
reports from Dr. Bixby, the ALJ told the claimant that he would
obtain whatever medical records Dr. Bixby had.  See id.  The
ALJ, however, failed to do so.  See id. at 997.  Based upon the
foregoing, the court of appeals determined that the case should
be remanded, so that the SSA could obtain the records of Dr.
Bixby's treatment of the claimant.  See id. at 998.

Here, Poirier criticizes the ALJ for making a decision
based upon a medical record that is not very extensive, filled

with duplication, focused primary upon his knee condition rather than his back condition, and lacking an assessment of his physical RFC from his treating physician.  He does not, however, identify any additional treatment notes or other medical records, such as those in Heggarty, that would have been material to the ALJ's decision.  Rather, claimant argues that the ALJ was obligated to obtain a consultative medical examination in order to properly assess his claim that he was unable to perform the sitting requirements of sedentary work. The court does not agree.

     The relevant Social Security regulations provide that if a claimant's

> medical sources cannot or will not give us sufficient
> medical evidence about [a claimant's] impairment for
> us to determine whether [the claimant is] disabled . .
> . we may ask [the claimant] to have one or more
> physical or mental examinations or tests.

20 C.F.R. §§ 404.1517 & 416.917.  Such examinations are referred to as "consultative examinations," and the regulations define a "consultative examination" as "a physical or mental examination or test purchased for [a claimant] at [the] request and expense [of the SSA] from a treating source or another medical source." 20 C.F.R. §§ 404.1519 & 416.919.

     Regarding the circumstances under which a consultative examination must be procured:

> The ALJ is required to order additional medical
> tests and exams only when a claimant's medical sources
> do not give sufficient medical evidence about an
> impairment to determine whether the claimant is
> disabled. 20 C.F.R. § 404.1517; see also Conley v.
> Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In
> fulfilling this duty to conduct a full and fair
> inquiry, the ALJ is not required to order a
> consultative examination unless the record establishes
> that such an examination is necessary to enable the
> ALJ to render an informed decision. Carrillo Marin v.
> Sec'y of Health & Human Servs., 758 F.2d 14, 17 (1st
> Cir. 1985).

Pelletier v. Colvin, C.A. No. 13-651 ML, 2015 WL 247711, at *11

(D.R.I. Jan. 20, 2015). In other words, "[t]he regulations do

not require an ALJ to refer a claimant to a consultative

specialist, but simply grant him the authority to do so if the

existing medical sources do not contain sufficient evidence to

make a determination." Rudge v. Astrue, No. 1:11-cv-440-DBH,

2012 WL 5207591, at *2 (D. Me. Sept. 30, 2012) (emphasis added)

(quoting Foster v. Halter, 279 F.3d 348, 355 (6th Cir. 2001)),

report and recommendation adopted by 2012 WL 5199412 (Oct. 22,

2012).

There are at least three problems with Poirier's claim that

the ALJ erred by failing to order a consultative examination.

First, he never alerted the ALJ to any gap in his medical

records that would necessitate a consultative examination, nor

did he ever ask the ALJ to procure one. See Stefanowich v.

Colvin, Civ. Action No. 13-30020-KPN, 2014 WL 357293, at *3 (D.

Mass. Jan. 30, 2014) (concluding "that the ALJ did not err in failing to order a third CE" and noting "that Plaintiff did not request such a consultative examination").  Second, Poirier has identified nothing in the record to suggest that this is a case in which his medical sources cannot or will not provide medical evidence such as a treating-source assessment of his RFC.  Thus, it would not appear that Poirier has established a necessary prerequisite for obtaining a consultative examination.

Third, and most importantly, Poirier has not established that the ALJ needed a consultative examination in order to make an informed decision, i.e., a decision supported by substantial evidence.  He argues that his testimony about his inability to sit for long periods imposed an obligation upon the ALJ to obtain medical evidence concerning that claimed physical limitation.  However, there is medical evidence on that claimed limitation in the record, in Dr. Nault's RFC assessment.  The presence of that evidence obviated any need for a consultative examination.  See Austin v. Barnhart, No. 03-156-B-W, 2004 WL 1896999, at *3 (D. Me. Aug. 25, 2004) (ruling that "the presence of . . . state-agency psychological evaluations mean[t] that [a consultative psychological examination] was not necessary"), report and recommendation adopted by 2004 WL 2095727 (Sept. 20, 2004).

Poirier also argues that a remand is in order because the ALJ failed to adequately develop the record concerning his inability to take pain medication due to a stomach disorder. The court begins by describing the manner in which the ALJ handled Poirier's stomach condition and then turns to claimant's argument on this point.

Early in the hearing, the ALJ noted Poirier's claims that he suffered from degenerative disease in his left knee and back, irritable bowel syndrome, gastroesophageal reflux disease, depression, and anxiety. Then he asked "Did I miss anything?" Tr. 35. Poirier responded:

> I've got a stomach disorder. I'm unable to take any type of medications because [of] the stomach disorder I have due to the long term taking of Motrin in the military, I don't remember what they labeled it as for the disorder, but they try and have me take powders and everything for my stomach because I can't handle pills.

Id. In the context of discussing the treatment he had received for his mental impairments, Poirier explained:

> They bounced me around from person to person, [exacerbating] my problem instead of helping, just telling me to take the pills. And when I told them I had the stomach issue, that I was having difficulty with the pills, it was making me ill, just physically making me more pain which was making me have more problems mentally, all I got was the types of comments, well you have to do your own part. You have to participate.

Tr. 41.  Shortly thereafter, the following exchange took place between the ALJ and Poirier:

> Q   With your stomach issues you're on no medication?
>
> A   Yes, sir.  The stomach causes me to, any time I try and take any medications I get so [INAUDIBLE] stomach, that if I don't stop the process I end up throwing up and the bowel distress that it causes, and the nature of the vomiting and the bowel distress causes a surge of flexing of my muscles that then cause[s] all my joints and everything to hurt so bad that even my limited amount of rest that I get, I don't.  So it's just the entire package that comes with the pills.
>
> Q   Without any medication, what kind of GI issues are you having now?
>
> A   I don't, as long as I'm making myself eat okay, which has been doing better since I'm living with my son.  I do okay with the GI stuff.  I don't really have any issues with my bowel track or any problems until I take medication.  Even something as simple as Ibuprofen, if I take Ibuprofen two times a day at normal dosage I'll spend three to four days with loose to watery bowel distress.  It's severe.
>
> As far as narcotic pain pills, I have irritability from it.  It causes my stomach to be very very irritated, but I don't take them long enough to get in a cycle with them because of the irritation they cause me, to know whether or not they would have that same long term bowel effect issue, because I get so irritated in the stomach, I take them because the pain is so severe that I have to have something for it and I tolerate the stomach ache all night long, but I very rarely will go a second dose because I know what's coming with my stomach.

Tr. 43-44.  Finally, after he heard testimony from the VE, the ALJ asked Poirier whether he had any questions for the VE or

anything else he wanted to say.  While Poirier provided further testimony about his inability to sit for prolonged periods, he said nothing more about his ability to tolerate pills.

In his decision, when assessing the severity of Poirier's physical impairments, the ALJ had this to say about Poirier's stomach condition: "In addition, the claimant alleges stomach issues due to GERD/irritable bowel syndrome when he takes prescription medication.  However, he currently is not on any medications and he testified that with proper diet, he presently has no stomach/GI issues."  Tr. 14.  Then, in his discussion of Poirier's credibility, the ALJ stated that "[t]he claimant's pain is treated with only mild over the counter pain control."  Tr. 17.

Poirier argues that the ALJ erred by failing to ask him any questions about how his inability to take pain medications impacted his pain.  That error, Poirier argues, taints both the ALJ' credibility assessment and the ALJ's determination that he was capable of sedentary work.  There are several problems with Poirier's argument.

While Poirier criticizes the ALJ for failing to ask sufficient follow-up questions, he does not indicate what additional testimony he would have provided in response to the questions he says the ALJ should have asked.  And, indeed, the

16

hearing transcript includes a rather substantial amount of
testimony on Poirier's claimed inability to tolerate pain
medication.  Poirier's specific complaint seems to be that after
the ALJ elicited testimony about his inability to tolerate pain
medication, the ALJ should have asked him about the pain he had
to endure as a result of not taking such medication.  But, other
parts of the hearing transcript contain ample testimony about
Poirier's alleged pain, and the ALJ's decision not to elicit
duplicative testimony on this issue does not constitute a
failure to develop the record.

Moreover, this case is readily distinguishable from the
case upon which Poirier relies for his argument, Musto v.
Halter, 135 F. Supp. 2d 220 (D. Mass. 2001).  In that case, the
ALJ questioned the claimant in a series of exchanges that the
court characterized as "more confusing than informative."  Id.
at 230.  Based upon that characterization, the court ruled:

> [T]he administrative law judge failed adequately to
> develop the record of Musto's pain medications.
> Corchado v. Shalala, 953 F. Supp. 12, 16 (D. Mass.
> 1996) ("[T]he Administrative Law Judge neglected to
> ask [the claimant], as Avery requires, whether any of
> [the claimant's pain] treatments had either alleviated
> his pain or caused any adverse side effects.").
> Therefore, his conclusion that Musto's assertions of
> pain were not credible and his finding that Musto has
> the residual functional capacity to perform sedentary
> jobs are not supported by substantial evidence.
> Bazile [v. Apfel], 113 F. Supp. 2d [181,] 190 [(D.
> Mass. 2000)]; Corchado, 953 F. Supp. at 16 ("Because
> the Administrative Law Judge did not adequately

17

> develop the record as to [the claimant's] subjective
> complaints of disabling pain, her conclusion that [the
> claimant] has the residual functional capacity to
> perform sedentary work is not supported by substantial
> evidence.").

Musto, 135 F. Supp. 2d at 230-31.  Here, by contrast, the ALJ

did elicit testimony on the issues identified in Corchado, i.e.,

the effects of Poirier's pain medication.  And, in his decision,

the ALJ provided a detailed explanation of his determination

that Poirier's statements concerning his symptoms were not fully

credible.

In support of that determination, the ALJ noted, among

other things, that Poirier relied upon mild over the counter

pain medication.  According to Poirier, his reliance upon over

the counter pain medication results not from a lack of severe

pain, but from his inability to tolerate stronger medications.

The ALJ's finding on this point does not constitute reversible

error.

In the first place, it is for the ALJ, not the courts, to

draw inferences from the record evidence.  See Irlanda Ortiz,

955 F.2d at 769.  Thus, the court declines to second-guess the

ALJ's inference that Poirier's reliance upon over the counter

medication casts doubt on his statements about the intensity of

his pain.  But, even if the court were to find that the ALJ's

inference was not supported by substantial evidence, the ALJ's

ultimate assessment of Poirier's credibility is supported by substantial evidence.  That is because the ALJ based his credibility determination on far more than Poirier's limited use of pain medication.  Specifically, the ALJ also relied upon evidence of the positive effects of treatment other than medication, observations made by Poirier's treating physician and physical therapist, and Poirier's activities of daily living.  Given that constellation of evidence supporting the ALJ's credibility assessment, the court cannot conclude that the ALJ's reference to Poirier's use of over the counter pain medication in his credibility assessment was an error warranting a remand.

### 2. Witness Testimony

Poirier's second claim of error concerns the ALJ's alleged refusal to hear testimony from his ex-wife and his son concerning the manner in which pain affected his activities of daily living.  In his view, that testimony would likely have resulted in a favorable decision from the ALJ.  The Acting Commissioner argues that Poirier's claim fails because there is no cognizable evidence that the ALJ refused to let his witnesses testify and also argues, in the alternative, that Poirier cannot demonstrate that he was prejudiced by the absence of the testimony he wanted to place before the ALJ.

The administrative record includes a transcript of Poirier's hearing.  That transcript does not document any request by Poirier to admit witness testimony.  Necessarily, it documents no denial of such a request.  Indeed, in his motion for a sentence-six remand, document no. 10, Poirier relied exclusively upon his own affidavit to establish that before his hearing went on the record, he discussed the admission of witness testimony with the ALJ.  According to the Acting Commissioner, the lack of record evidence bars Poirier from arguing, in this court, that the ALJ erred by refusing to allow his witnesses to testify.  The court agrees.

Sentence four of 42 U.S.C. § 405(g) provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" (emphasis added).  On its face, that statute limits this court's review, under sentence four, to a consideration of the administrative record, which does not document a refusal by the ALJ to allow Poirier's witnesses to testify.  Plainly, it was appropriate for the court to consider Poirier's affidavit when ruling on his motion for a sentence-six remand.  See Dawson v. Bowen, 136 F.R.D. 618, 620 (S.D. Ohio 1988).  But the court has been able

to locate no authority that would permit the consideration of that affidavit now, when the question before the court is whether Poirier is entitled to a sentence-four remand.

Poirier cites two cases for the proposition that an ALJ fails to properly develop the record when he or she refuses to hear testimony from lay witnesses a claimant proposes to call. See Echevarria v. Sec'y of Health & Human Servs., 685 F.2d 751 (2d Cir. 1982); Barrera v. Sec'y of Health & Human Servs., 872 F. Supp. 24 (E.D.N.Y. 1995). But in both of those cases, the ALJ's refusal to allow testimony was evident to the reviewing court from the transcripts of the claimants' hearings. See Echevarria, 685 F.2d at 754 n.2; Barrera, 872 F. Supp. at 25. Here, it is not.

Based upon the foregoing, it would appear that Poirier's argument is barred by his failure to ask the ALJ, on the record, whether he could call his ex-wife and son as witnesses. But, even if the court were to assume that Poirier's affidavit contains an accurate description of his pre-hearing interaction with the ALJ, and that the rather ambiguous interaction described therein is properly construed as a refusal to allow the disputed testimony, and that the ALJ had a duty to prompt Poirier to make his request to admit that testimony on the record, Poirier's claim would still fail.

The court begins by noting that Poirier does not identify any legal framework or standard for deciding whether an ALJ's failure to allow witness testimony requires a remand.  Neither Echevarria nor Barrera offers any assistance on this point.  In Echevarria, the ALJ's failure to allow the claimant's witness to testify was insufficient, standing alone, to warrant a remand but, rather, was one of several errors which, in total, deprived the claimant of a fair hearing.  See 685 F.2d at 757.  In Barrera, the court granted the claimant a sentence-six remand and ordered the SSA to consider new evidence in the form of a doctor's report.  The court also criticized the way the ALJ handled witness testimony the claimant wanted to introduce:

> [T]he ALJ, knowing that the claimant's husband
> initially intended to testify, nevertheless failed to
> obtain corroboration from him regarding the claimant's
> subjective symptoms of pain.  This area, likewise,
> should have been explored further at the
> administrative hearing.

872 F. Supp. at 28 (citing Echeverria, 685 F.2d at 755-56).  Judge Seybert's order, however, provides no guidance regarding how to determine whether an ALJ's failure to hear testimony from a potentially corroborating witness, standing alone, warrants a remand.

Be that as it may, according to Poirier, "[t]he testimony of [his] witnesses had the likelihood of changing the ALJ's assertion that his activities of daily living supported the RFC

to do sedentary work."  Cl.'s Mem. of Law (doc. no. 16-1) 9.
The record does not support that argument.  After the ALJ stated
in his decision that "[t]he claimant's reported daily activities
show a fairly independent, active lifestyle that further
supports the claimant's residual functional capacity assessment
noted above," Tr. 18, he went on to base his analysis largely
upon claimant's own reports of his daily activities.  If Poirier
were arguing that his witnesses' testimony would somehow show
that he did not actually engage in the activities that he
reported, then, perhaps, his argument might have some merit.
But that is not his argument.  Moreover, the court has found
nothing in the affidavits of Poirier's ex-wife and son that is
likely to have altered the conclusion the ALJ drew from
Poirier's reports of his activities of daily living.  Thus, even
if properly before the court, Poirier's argument would not
entitle him to a remand.

## IV. Conclusion

Because the ALJ has committed neither a legal nor a factual
error in evaluating Poirier's claim, see Manso-Pizarro, 76 F.3d
at 16, Poirier's motion for an order reversing the Acting
Commissioner's decision, document no. 16, is denied, and the
Acting Commissioner's motion for an order affirming her
decision, document no. 18, is granted.  The clerk of the court

shall enter judgment in accordance with this order and close the case.

     SO ORDERED.

                                     _____

                                     Landya McCafferty
                                     United States District Judge

August 27, 2015

cc:   Bennett B. Mortell, Esq.
       Robert J. Rabuck, Esq.